Good morning, Your Honors. May it please the Court, I represent the plaintiff in this action, and plaintiff is Elie Harfouche. Could you move the microphone just a little bit? Oh, sorry. There you go. Thank you. Thank you. So there are two issues that we appealed in this appeal. The first one is whether Mr. Harfouche had committed a breach that entitled Ms. Wehbe to that excused her from performing her side of the contract. And the second issue is whether she had committed expoliation by telling the plaintiff, telling us that all of the e-mails that she had that were related to this contract were, quote-unquote, destroyed by her assistant when he or she was fired. On the first issue, on the issue of the contract, the contract is pretty clear. It's not well written. It's kind of ambiguous. But it is clear that it's a contract between Mr. Harfouche and Ms. Wehbe. He's a promoter. She's an entertainer. She was supposed to come to the United States and Canada and perform in a few different concerts. The contract does say that she will be accompanied by another artist. And later on, as was confirmed by both parties, she decided she did not want to perform with that artist. She requested another artist. Mr. Harfouche agreed. However, he was unable to get a visa for the other artist. Now, this other person was supposed to be the second act accompanying her. There's nowhere in the contract that says anything about a condition for her to be performing with the second person who was unable to get a visa. Specifically, in this case, this person that she says she had to perform with was not even mentioned in the contract. He is not mentioned in the amendment to the contract. For some reason, the Court decided that because there was proof that the parties did talk about this other person, Mr. Allami, accompanying the artist, and because Mr. Harfouche was unable to obtain a visa for him, therefore, she would be excused from performing her side. She would be excused to withholding and retaining whatever deposit, all the expenses, and she had no liability under the contract. Our position is that she had no right to cancel her performance. She had no right to unilaterally breach her side of the contract. She should have performed. And certainly, if she decided not to, she breached the contract. She should be responsible for whatever penalties, whatever damages the contract  So the addendum on 410-06, 410-07, the subject line says, after it mentions the scheduled performance dates in the USA and Canada, it says, accompanies the singer Raghibet Allami on the same performance. Right. You're talking about the contract agreement? No, I'm talking about the addendum. Oh, the addendum. I'm sorry. And the addendum talks about the fact that Mr. Raghibet Allami will be accompanying him. There is no condition about — yeah. There's no condition of having him get a visa. There's nothing that says that if he doesn't, if he can't make it or for some reason he doesn't get a visa. That amendment didn't change the requirement in your initial contract regarding the visa. So there is — He had the obligation to get the visas, did he not? He had the obligation to get the visa, and he got the visa for the main person who was doing the agreement. The issue was — the issue that they made is that he was unable to get the visa for the person who was going to accompany that person. And — Where in the contract does it give him the authority to substitute whomever he wants? He wasn't trying to substitute. They had — they're — she's the one who requested to have somebody else because she testified in her deposition, and there's agreement from both parties that she's the one who requested another person. She said she doesn't want Mr. Taufik. And he agreed. He did agree. Then where in the contract does it say he can displace that choice? It doesn't say that. Okay. It doesn't say that. The contract does not say that. But I just think that our position is that although the contract is implicitly says that he's got to get visas for everybody, and he was not able to get for the other person, but it's not a material term of the contract. There's nothing in the contract. And the proof that it's not material is because she later decided she wanted somebody else. So there's no reason why the fact that she wasn't able to get the other person that they both agreed should be accompanying her, the fact that she couldn't get a visa for him, there's no reason that was no excuse for it. That's not a material breach that would have allowed her to — to cancel the performance. It was not material. Why have to put it in the amendment? Well, the amendment says other things also. It talks about — it talks about, you know, reducing the price. It talks about some of the other things that they want to do. And it's — I mean, it is part of the contract that somebody else was supposed to come with her. It's just that, you know, they were not able to get that, and that in itself was not a material breach for her to — you know, excusing her from the performance under the contract. And — I thought she appeared for the performances in Canada, correct? That's correct. And she was accompanied by Allame, correct? Correct. He was there with her? Yes, he was. And they shared a band. Yes. Band members, correct? And the problem was, your client couldn't get the visas for Allame to enter into the United States. That's correct. And even before they left to come to Canada, to — to perform in Canada, they canceled the performances in the United States. Isn't that right? He only canceled — and that's on the record — he only canceled after she said that she would not go to the United States because he couldn't get the visa. He did cancel eventually. At some point, he had to cancel when she said that she's not going to go if he doesn't go. And that's what he did. But, you know, where our position is that her saying that, her refusing to go to the United States just because Allame could not get his visa was a breach of the agreement in the first place. All right. And on — as far as the issue of the spoliation, that one is also pretty straightforward. So she testified, and she said — I mean, those emails were very material, were very relevant. It was the communications between the party. It would have shed light on what the intent was and what would have happened if, you know, something like Mr. Allame not getting a visa. What would have happened then? She testified simply. She said that, well, you know, I had all those emails. You know, we had it, but I don't have it anymore because I had an assistant. And when she left, she deleted all of the emails, provided no proof of that, just didn't even say exactly at what time it happened or when it happened. She couldn't remember. And all she said was that, well, sorry, I don't have it because my employee erased them. And that's — you know, we put in our papers that if that's going to be the standard, then it's — any party can always claim that, you know, my employee — Is there any evidence in the record that she knew that there was pending litigation or future litigation or potential litigation or likely litigation? Well, there's two issues there. First of all, we don't know what — when that happened. You know, I asked her, and she said she thought it was around 2008. When did you — let me put the — my question was, when did — was there any evidence in the record when she was informed that there was going to be litigation? Well, at some point she was, certainly. Well, that's — you're still not answering my question. When? When? When was she informed? I would say that when — when he started making demands, certainly by the time he filed the lawsuit, which was in, I guess, 2010. Certainly at that point, she knew about it. In 2008 and 2009, they had communications where he was accusing her of having breached the contract. The real problem is we don't know — When did she fire her assistant? We don't know. That's the real problem. I don't know when that happened. She said she thought it was maybe in 2008, but she doesn't know when — you know, when that happened. So, you know, we're left with a situation where a party can just say, well, you know, I don't remember. I don't know. Somebody erased it. It happened at some time. I suggest that I would put — our position is that if a party — you know, the burden shifts once you make — once you make a — once you can make a showing that the party erased — you know, erased, deleted emails, then the burden should shift on the other party to prove, well, why it happened and why he or she is innocent of the deletion. There was no such thing done. It was just a statement from her saying that, oh, they were erased when she left without giving any more information. What would be material in any of that information that you believe has been spoiled? For example, if there was any communication where she said that she — you know, it wasn't — that she wanted Allame because, you know, he was better than the other person that she had, and any indication that it wouldn't have been material who the person was who was going to sing with her. You know, we put in the record that she eventually agreed to come to the United States without a person who my client feels is not as prominent as the other person that he had. It seems that you want to go outside the contract and present evidence that's outside of the contract to interpret the contract. That is correct, Your Honor, because it's not — You can see that it was — is an ambiguous or an unambiguous contract. It was — we were saying that it is ambiguous. It was not — It is. It is ambiguous. It's — Perhaps it is. Or push, correct? I think so. I don't remember right now, honestly. But I think that — I think he's the one who did it. So it runs against him, does it not? If he did it, it would run against him. But still, if there's an ambiguity between the parties, you know, you have to go to the outside evidence in order to determine whether it was a material element and how it was reached. Your Honor, reserve. Thank you. Good morning, and may it please the Court. I'm Mark Carlin, counsel for appellee and defendant Haifa Webe. I'll be brief. I don't want to repeat most of the arguments that were made in our brief. It's well settled that a party who breaches a contract may not then sue the other party to the contract for breach of contract. And that's what occurred here. The amendment of 2007 could not be clearer that my client agreed with the plaintiff that singer Rahib Alameh, and sometimes I believe it's the — actually, the correct spelling is Alamah, but it's Alameh in the amended agreement, would accompany her on all the performances listed. And as a very prominent entertainer in the Arabic-speaking world, the person with whom she shares a contract billing is quite important for not only her stature, issues of compatibility, and her fans' reaction to who she's sharing her bill with. So it was crucially important to her. The term is unambiguous. As the Court pointed out a few minutes ago, my client did appear in Canada under concerts promoted by the plaintiff with Mr. Alameh, and there was evidence obtained during the course of litigation that, in fact, Mr. Hartouche canceled the U.S. concerts, I think even before my client left Lebanon to go to Canada, because he could not secure the proper visa for Mr. Alameh. Now, as far as the spoliation argument, of course, we agree with the district court. There was never any evidence that, first of all, is a threshold issue, that my client destroyed any evidence. And just as importantly as to item number two, the court never found, because there is no evidence, that there was ever a triggering event which would compel her to preserve any documents that she might have possessed. I believe the earliest triggering event would have been three years after the occurrence of the events in this case in 2010 when Mr. Hartouche first attempted to sue my client in the District of New Jersey. With that, Your Honors, I'll submit unless there's questions from the Court. Any questions? Thank you. Thank you, Your Honor. For rebuttal? I don't have anything for you to add, Your Honor. Okay. Okay. Thank you. Thank you very much for your arguments. The case to argue will be submitted for decision and will be in recess in the morning.
judges: Thomas, Paez, Savage